VICTORIA PHALEN, as Administratrix, etc., of JOHN PHALEN, Deceased, Plaintiff, *v.* WALTER S. RAE and NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Defendants.

(Supreme Court, Rensselaer Trial Term, October, 1917.)

Negligence — contributory — actions — when defendant entitled to judgment.

In unloading lumber from a car on a siding, two men were engaged in raising the lumber and plaintiff's intestate was engaged in blocking it. For some unexplained reason a piece of lumber was allowed to project from the side of the car toward

the main track·and one of the defendant's freight trains, running from two to four miles an hour, ran against the projected timber, causing it to turn so as to engage the body of plaintiff's intestate and throw him to the ground so near to the main track that some part of the engine or tender struck him on the head and killed him. *Held,* that on proof that the engineer when fifteen feet away from the car on the siding blew the whistle, applied the brakes, except the emergency brakes, and gave deceased notice to pull in the plank, defendant was entitled to judgment.

ACTION for negligence.

J. F. & W. H. Murray, for plaintiff.

Visscher, Whalen & Austin, for defendant railroad.

HASBROUCK, J.   On the 23d of January, 1914, John Phalen, the plaintiff's intestate, was at work unloading a car of lumber at South Little Falls.  The car was on a siding and the lumber was held in it by stakes which projected above the sides.  In type the car was what is known in railroad operation as a gondola car.  In unloading the lumber two men were engaged in raising it up and Phalen in blocking it.  For some reason, which does not appear in the evidence, a piece of this lumber was allowed to project from the side of the car on the switch toward the main track.  A freight train running from one to two miles an hour ran against the projecting timber and caused it to turn so as to engage the body of Phalen and throw him on the ground so near the main track that some part of the engine or tender struck plaintiff's intestate on the head and killed him.

The complaint among other things charges that the defendant railroad " ran its engine carelessly, negligently and wantonly against the appliance with which plaintiff's intestate and others were working and

caused same to be moved so that it struck plaintiff's intestate and threw him to the ground * * * so that he sustained injuries from which he died."

There was a trial had of the action upon the theory of negligence which resulted in a verdict in favor of the plaintiff for $10,000. The judgment was finally reversed in the Court of Appeals upon the ground that the plaintiff's intestate was guilty as matter of law of contributory negligence and a new trial ordered. Such trial was had before Mr. Justice Howard and a jury. The case was submitted to the jury to find whether the grievous act was wanton and the jury failed to agree. The case has been now stipulated to be tried before the court without a jury.

Upon second trial the evidence was not changed in any material respect. To ascertain whether the complaint be justified the conduct of the engineer who operated the locomotive should be examined. The train was made up of an engine and sixty loaded cars of coal. Some thousand feet away from the siding, Martin, the engineer, noticed a car there and a man working in it. The train was drifting and as it approached the siding had slowed down to between one and two miles an hour. When from twenty to thirty feet away from the car the engineer noticed that a timber protruded over the side of the car. He though it might collide with the engine and called out to plaintiff's intestate " You son of a bitch pull your board in." When about fifteen feet away he saw the plaintiff's intestate endeavoring to pull the board in. About the same time Martin called to Phalen he blew the engine whistle and applied a brake making a reduction of ten pounds the result of which was to stop the train in the ordinary way. It stopped about two cars length past the point of the accident. The plaintiff claims that the conduct of Martin was wanton in not

applying the emergency brake. Is that fact alone sufficient to charge the defendant with wantonness? Martin swears " you couldn't stop that train no matter what you done with it " so as to keep it from colliding with the plank. It does not appear that Martin knew or that any prudent man could have foreseen that the collision with the projecting timber would have resulted in injury or death to Phalen. It does appear from the reprehensible language Martin used in accosting Phalen that Martin's idea was to save his engine from the collision and that he thought the danger lay there. He further gives as a reason for not using the emergency brake that with the train proceeding from one to two miles an hour such an application of the brakes would have been " to buckle the train and put it over if there is a weak spot at all."

The decision of the case hangs upon whether Martin's conduct in the premises was wanton. To constitute such conduct there must be a conscious knowledge in a person of existing conditions; that injury would be likely to result from the act and that then heedlessly and recklessly he performed some wrongful act or omitted some known duty which produced the injurious result. Bouvier Law Dict. 3418; *Hazle* v. *Southern Pac. Co.*, 173 Fed. Repr. 431; *Louisville & Nashville R. R. Co.* v. *Webb*, 97 Ala. 312; *Ga. Pac. Railway Co.* v. *Lee*, 92 id. 271; Words & Phrases, 7385.

It will be seen from the definition that wanton negligence and negligence are quite distinct from one another in the law. The plea of contributory negligence constitutes no defense to a complaint for a wanton act. It makes no difference what the degree of negligence charged may be, whether slight, ordinary or gross. *Milwaukee & St. Paul R. R. Co.* v. *Arms,* 91 U. S. 494.

Supreme Court, October, 1917. [Vol. 101.

Indeed the highest authorities ignore degrees of negligence in administering the law. Such divisions of negligence are held to serve no useful purpose. One of the tests of whether an act constitutes wanton negligence is whether exemplary damages may be imposed. Sedg. Dam. (9th ed.) 729.

Would the facts in this case warrant the imposition of such damages? That depends upon whether the conduct of the engineer was purposely mischievous or malicious or whether it was so reckless and regardless of consequences as to be the equivalent of a willful act. An act to be wanton in the law should be without care. Where there exists slight care or some care it may not be held to be wanton. *Milwaukee & St. Paul R. R. Co.,* v. *Arms, supra.*

Applying such rule to the case at bar we are unable to hold the act of the defendant to be more than negligent. The engineer looked, blew his whistle, applied the brakes, except the emergency brakes, and gave notice to the deceased to pull in the plank. While such conduct undoubtedly was not adequate to the requirements of the situation and he should have applied the emergency brakes, yet in the light of the definition and the authorities we are compelled to hold that the conduct of the defendant was not wanton and that it should have judgment.

Judgment accordingly.